ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-ESPECIAL

| | | |
|---|---|---|
| MARYANGELY E. MORENO CAMPA<br><br>Peticionaria<br><br>RICARDO DALMAU SANTANA<br><br>Recurrido<br><br><br>EX PARTE | KLCE202500104 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: F DI2015-0746<br><br>Sobre: Divorcio, Consentimiento mutuo |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Mateu Meléndez.[1]

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de junio de 2025.

Comparece la parte peticionaria, Maryangely E. Moreno Campa, mediante el recurso de epígrafe y nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 31 de octubre de 2024, notificada el 7 de noviembre del mismo año. Mediante el referido dictamen, el foro primario declaró No Ha Lugar una solicitud de reembolso promovida por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se expide el auto solicitado y se revoca la determinación recurrida.

### I

El 7 de junio de 2013, Maryangely E. Moreno Campa (Moreno Campa o peticionaria) y Ricardo Dalmau Santana (Dalmau Santana o recurrido) presentaron de manera conjunta una *Petición* sobre

---

[1] Mediante Orden Administrativa OATA-2025-011 de 5 de febrero de 2025, se designó a la Hon. Ana Mateu Meléndez en sustitución de la Hon. Lersy Boria Vizcarrondo, quien se inhibió en el caso de epígrafe.

Número Identificador

SEN2025 _____

divorcio por consentimiento mutuo.[2] Durante su matrimonio, procrearon dos (2) hijos. En dicho documento, estipularon varios aspectos sobre la patria potestad, custodia y pensión alimentaria de los menores, así como aspectos relacionados a los bienes gananciales y la adjudicación de obligaciones y deudas adquiridas durante el matrimonio. En lo aquí atinente, las partes estipularon lo siguiente sobre la pensión alimentaria de sus hijos:

1. El Peticionario pagará por concepto de pensión alimentaria para sus dos hijos la cantidad de $2,385.00 mensuales, a ser satisfecha mediante depósito a la cuenta de cheques [...] del "First Bank" a nombre de Maryangely E. Moreno Campa, en o antes del día cinco (5) de cada mes.
2. El Peticionario será responsable además del 70% de los gastos por concepto de matrícula, uniformes y libros de los menores. Estos gastos serán satisfechos de la siguiente manera:
   a. 70% de la matrícula del Colegio de C[.D.M.], durante el periodo de matrícula de enero a marzo de cada año escolar.
   b. 70% de la matrícula del cuido de N[.D.M.], libros y efectos escolares de C[.D.M.] y uniformes de ambos, para julio de cada año escolar.
   c. El Peticionario deberá depositar las correspondientes partidas en la cuenta del First Bank mencionada anteriormente.
   d. La Peticionaria deberá presentar al Peticionario los documentos escolares que detallan el costo de la matrícula y los recibos de los gastos de los libros, uniformes y efectos escolares para el correspondiente reembolso.
3. Todas las inscripciones y gastos de actividades extracurriculares y deportes de los menores serán por acuerdo entre las partes y pagadas por partes iguales entre los Peticionarios.
4. Actualmente[,] la Peticionaria provee cubierta médica tanto para el Peticionario como para ambos menores. La Peticionaria continuará proveyendo cubierta médica para los menores hasta el mes de junio de 2013. A partir de dicha fecha, de no estar disponible un plan médico provisto por cualquier patrono de los Peticionarios, [e]stos proveerán cubierta médica para los menores, a un costo razonable, responsabilizándose cada uno del 50% del costo. Si la aprobación del patrono no sufraga el costo total de la cubierta médica para los menores, cada Peticionario será responsable del 50% del remanente. (Énfasis omitido).

---

[2] Apéndice del recurso, págs. 1-6.

Luego de una vista a esos efectos, el 26 de junio de 2013, el Tribunal de Primera Instancia emitió una *Sentencia* disolviendo el matrimonio entre las partes.[3] A su vez, aprobó las estipulaciones esbozadas por las partes en su petición y las hizo formar parte de la determinación.

Posteriormente, el 18 de noviembre de 2016, Moreno Campa instó una *Moción Incluyendo Estipulación sobre Alimentos y Desacato y Solicitud [para que] se Deje sin Efecto Vista de Pensi[ó]n Alimentaria y Vista de Moción.*[4] Indicó que, a raíz de unas controversias en cuanto a la pensión alimentaria de los menores en cuestión, las partes llegaron a unos acuerdos. Junto a dicha moción, anejó un documento intitulado *Estipulación sobre Alimentos y Desacato.*[5] Alegó que, el 23 de abril de 2016, Dalmau Santana había solicitado la custodia compartida de sus hijos, con posterioridad a una solicitud de desacato presentada por esta ante presuntos incumplimientos de Dalmau Santana con la *Sentencia* del 26 de junio de 2013. En lo pertinente a la pensión alimentaria de los menores, las partes acordaron que:

[...]

iii.   La pensión alimentaria mensual correspondiente al co-peticionario consistirá en el 50% de la mensualidad escolar, estudios supervisados, cafetería escolar y plan médico equivalente a la cantidad de $754.08 mensual, a ser pagados dentro de los primeros cinco (5) días de cada mes directamente a la peticionaria Moreno [Campa] durante los meses de enero a mayo y agosto a diciembre. Durante los meses de junio y julio el peticionario pagará directamente a la peticionaria Moreno [Campa] la cantidad de $176.08 mensual por concepto del plan médico, a ser pagados dentro de los primeros cinco (5) días del mes. Asimismo, el peticionario pagará el 50% del campamento de verano previamente acordado entre las partes. Además, pagará el 50% de los gastos mensuales por concepto de actividades

---

[3] Apéndice del recurso, pág. 7.
[4] Apéndice del recurso, págs. 8-9.
[5] Íd., págs. 10-16.

extracurriculares mediante acuerdo entre las partes.

iv. De surgir algún aumento de los costos de mensualidad escolar, cafetería escolar, estudios supervisados[,] será distribuido automáticamente en partes iguales entre las partes (50%) y se añadirá a la mensualidad expuesta en el inciso (i).

v. De surgir aumento en el plan médico y aquellos gastos de los menores que no sean recurrentes ni previsibles[6], serán informados al Sr. Dalmau Santana tan pronto ocurra el aumento. El peticionario tendrá 5 días más para contestar si está de acuerdo o no en incurrir en el gasto y viceversa. Si el peticionario no contesta en dicho término, se entenderá que está de acuerdo [con el] mismo. En caso de que la co peticionaria no consiga al co peticionario y sea una situación con carácter de emergencia[7], el co peticionario le hará el reembolso correspondiente al siguiente día y viceversa. En caso de oponerse[,] tendrá que ser por justa causa y deberá proveer una alternativa de plan médico de igual cubierta y mejor precio. De lo contrario[,] tendrá que pagar el 50% del aumento.

vi. La matrícula escolar, libros y materiales quedan excluidos de ser consultados con el co-peticionario, pues es un gasto previsible del cual ya [e]ste tiene conocimiento. Estos gastos serán pagados en partes iguales y simultáneamente por cada una de las partes, tomando en consideración la fecha de vencimiento. De haber algún recargo por pago tardío en la matrícula, se le atribuirá a la parte que haya incurrido en mora y vendrá obligado a pagar el mismo. Si por alguna razón cualquiera de las partes tuviese que incurrir en algún gasto de materiales o libros con posterioridad al inicio de clases, la parte que incurra en el gasto presentará evidencia de recibo de pago y la otra parte tendrá 7 días calendario para realizar el reembolso correspondiente.

vii. Cada una de las partes asumirá el costo de uniformes escolares y será responsable de adquirirlos anualmente. De igual forma, cada parte será responsable del gasto de ropa y zapatos.

viii. Los gastos médicos o de salud no incluidos en el plan médico, deducibles, gastos mensuales de materiales escolares y cualquier otro gasto extraordinario que surja [con] relación a los descritos en este inciso, imprevisto o no, se

---

[6] Entiéndase[,] gastos extraordinarios.

[7] Entiéndase por situación con carácter de urgencia una situación de salud.

distribuirá en partes iguales entre los co-peticionarios.

C. Otros asuntos

ix. Las cuotas escolares, gastos de actividades escolares (día de juegos y excursiones, entre otras, y materiales para proyectos o tareas especiales) y los campamentos de verano serán costeados simultáneamente por ambos peticionarios en un 50%. En cuanto a los campamentos de verano, los co peticionarios deberán ponerse de acuerdo y pagar el 50% de cada uno simultáneamente. Sin embargo, los demás gastos se pagarán automáticamente por ambos peticionarios. De uno de los co-peticionarios asumir el costo total de cualquiera de estas partidas, el otro deberá reembolsar el 50% al día siguiente.

x. Las partes han acordado que la pensión alimentaria no será revisada en los próximos cinco (5) años, a partir de que este Honorable Tribunal acoja la presente [e]stipulación, salvo cualquier cambio en cuanto a la determinación de custodia o en caso de que los gastos de la [u]niversidad seleccionada por el menor C.D.M. resulte en un gasto mayor y no haya acuerdo. En ese caso, cualquiera de las partes podrá acudir al [t]ribunal, aunque no hayan transcurrido los cinco (5) años, pero solo a esos fines. (Énfasis omitido).

[...]

Atendida la moción, el 22 de noviembre de 2016, el foro *a quo* emitió una *Resolución* mediante la cual adoptó las referidas estipulaciones,[8] luego de adoptar el informe y recomendación del examinador de pensiones alimentarias a esos efectos.[9] En particular, el foro de origen resolvió que la pensión alimentaria acordada entre las partes regiría entre estas hasta que se realizara alguna nueva determinación por el foro de instancia. Indicó que la pensión no se modificaría sin la intervención del tribunal y podría revisarse transcurridos tres (3) años desde que la misma fue establecida. Señaló que no se modificaría la pensión alimentaria

---

[8] Apéndice del recurso, pág. 20.
[9] Íd., pág. 19.

antes de dicho término, a menos que ocurrieran cambios significativos o imprevistos en las circunstancias de alguna de las partes.

Así las cosas, el 25 de abril de 2025, Moreno Campa instó una *Moción en Solicitud de Orden de Reembolso por Incumplimiento con Resolución por Estipulación*.[10] Alegó que, cuando el menor C.D.M. culminó sus estudios de escuela superior y comenzó sus estudios universitarios, Dalmau Santana cesó de aportar la pensión alimentaria, con excepción de tres (3) pagos de $300.00 que hizo para las primeras tres (3) mensualidades del hospedaje de dicho menor. Arguyó que, sin ser liberado de tal responsabilidad, Dalmau Santana incumplió con la estipulación de asumir el cincuenta por ciento (50%) de los gastos del menor C.D.M. y, a su vez, dejó de hacer aportación económica alguna desde que dicho menor comenzó sus estudios universitarios. Según adujo, en bienestar del mencionado menor, había asumido el cien por ciento (100%) de los gastos de este a nivel universitario, incluyendo el hospedaje, lo cual había ascendido a un total de $202,473.92, cuyo cincuenta por ciento (50%) equivalía a $101,236.96.

Moreno Campa argumentó en el referido escrito que la responsabilidad de Dalmau Santana no culminaba automáticamente cuando C.D.M. alcanzó su mayoría de edad en octubre de 2022. Planteó que, debido a que C.D.M. se había mantenido en sus estudios profesionales ininterrumpidamente al momento de alcanzar la mayoría de edad, Dalmau Santana tenía la obligación de aportar el cincuenta por ciento (50%) de los gastos de estudio, conforme disponía el Código Civil de Puerto Rico de 2020. Sostuvo que, si Dalmau Santana quería liberarse de dicha responsabilidad, tenía que solicitarlo al tribunal. En vista de lo

_____

[10] Apéndice del recurso, págs. 23-26.

anterior, solicitó el reembolso de $101,236.96 y que se le ordenara a Dalmau Santana a cumplir con su obligación de asumir el cincuenta por ciento (50%) de los gastos de C.D.M. hasta que este culminara sus estudios universitarios.

Por su parte, el 12 de junio de 2024, Dalmau Santana se opuso.[11] Adujo que lo que regía en el caso de epígrafe era la estipulación sobre alimentos radicada por las partes el 18 de noviembre de 2016, la cual establecía la obligación de pago de ambas partes ante la custodia compartida. Especificó que las partes habían estipulado que asumirían el cincuenta por ciento (50%) de los gastos de matrícula escolar, libros, materiales y gastos médicos que no cubriera el plan médico, pero que nada se dispuso sobre el pago de los gastos universitarios, los cuales eran previsibles en aquel momento. Relató que, en el verano del 2019, no estuvo de acuerdo con Moreno Campa en que C.D.M. cursara sus estudios universitarios en los Estados Unidos, ya que no tenía la capacidad económica para asumir el pago de una universidad extranjera, a diferencia de Moreno Campa. Arguyó que, sin procurar autorización judicial, Moreno Campa matriculó a C.D.M. en una universidad en el estado de la Florida, aun cuando este no estaba de acuerdo. Según alegó, Moreno Campa le había indicado a C.D.M. que costearía la totalidad de los gastos universitarios. Sostuvo que, ante dicho escenario, comenzó a pagar el cien por ciento (100%) de los gastos del otro hijo menor, además de enviarle a C.D.M. entre $400.00 y $500.00 para sufragar sus gastos y necesidades.

Dalmau Santana planteó en su oposición que el descrito acuerdo tácito se mantuvo durante cinco (5) años, hasta que C.D.M. se graduó en mayo de 2024 de la universidad. Argumentó que Moreno Campa nunca acudió ante el tribunal durante dicho término

---

[11] Apéndice del recurso, págs. 30-33.

para reclamar el pago del cincuenta por ciento (50%) de los gastos de C.D.M. Planteó que, como quiera, no había razón para acudir ante el foro primario, porque de la propia estipulación surgía que las partes solo acudirían al foro judicial cuando no hubiera un acuerdo entre ellas, pero en este caso hubo un acuerdo tácito durante cinco (5) años. Por otro lado, arguyó que Moreno Campa actuaba temerariamente al ir en contra de sus propios actos, pues si esta hubiera entendido que él debía aportar el cincuenta por ciento (50%) de los gastos universitarios de C.D.M., debió acudir al foro judicial en el año 2019 a reclamarlo y no esperar cinco (5) años después para solicitarlo. En vista de ello, solicitó que se declarara No Ha Lugar la petición de Moreno Campa y que le impusieran a esta el pago de $1,000.00 por concepto de honorarios de abogado(a) por temeridad.

El 3 de septiembre de 2024, Moreno Campa replicó.[12] En síntesis, argumentó que las partes habían estipulado claramente que todo lo relacionado a lo académico sería sufragado por partes iguales durante el término de cinco (5) años. Alegó que, si Dalmau Santana no estaba de acuerdo con la selección de la universidad, procedía acudir al tribunal, mas no autoimponerse un cero por ciento (0%) de responsabilidad para con su hijo. En virtud de lo anterior, reiteró su solicitud de reembolso del cincuenta por ciento (50%) de los gastos educativos y extracurriculares de C.D.M.

Luego de varios trámites procesales, el 5 de septiembre de 2024, se celebró una vista a la que comparecieron las partes.[13] Según surge de la determinación recurrida, los argumentos esbozados por las partes durante la referida vista fueron los siguientes:

El Lcdo. Hernández argumentó[,] en parte[,] lo siguiente:

---

[12] Apéndice del recurso, págs. 41-44.
[13] Íd., págs. 61-63.

1. "[E]l menor [C.D.M.] estudiaba en la Universidad de Tampa y parte de las estipulaciones era que la madre pagaría el 50% y el padre el otro 50%. Una vez el joven comenzó a estudiar, el padre no ha satisfecho, según dispone la resolución…"[.]

2. "Surge de la resolución que, si una de las partes tenía controversia, en cuanto al pago de la universidad u otro asunto, tenía que acudir al tribunal porque parte de la estipulación era que no se iba a revisar la pensión por cinco años y ese término recoge la mayoría de edad."

3. "En ninguna parte indica que cuando el menor llegara a la universidad se dejara de pagar o que quedara desprovisto. Las partes tenían que continuar pagando el 50% durante los cinco años, sino tenían que comparecer al tribunal y no hubo reclamo. El acuerdo contempla que el joven C[.]D[.]M[.] iba para la universidad y no puede haber una enmienda extrajudicial porque el acuerdo no lo dice, las partes acordaron que la pensión alimentaria no sería revisada en los próximos cinco años, entiéndase el 50%, a menos que acudiera al tribunal por desacuerdo y no lo hizo."

4. "El padre no ha aportado nada a los gastos universitarios."

5. "La madre tiene el derecho de reclamar lo que pagó extra."

6. "A preguntas del tribunal, el licenciado Hernández indica que el menor se graduó en mayo de 2019."

La Lcda. Vázquez argumentó[,] en apretada síntesis[,] lo siguiente:

1. "En el inciso b 3 indica cómo se iba a dividir la pensión alimentaria, que incluye el 50% de la mensualidad escolar, no dice universitaria, estudios supervisados, cafetería escolar y el plan médico,…"

2. "En ningún momento, surge de la resolución nada sobre acuerdos en cuanto a la universidad."

3. "No existe controversia en derecho, los gastos universitarios no estaban incluidos[,] sino los escolares y si una de las partes no estaba de acuerdo, tenía que comparecer al tribunal."

4. "Se reitera que en ningún momento surge que su representado tiene que pagar el 50% de la universidad, no indica gastos educativos en ningún lugar, si indicara educativo pudiese incluir la universidad, pero no lo dice. El acuerdo es diáfano y claro y no existe ninguna duda, en todo momento habla de escolares."

5. "La licenciada Vázquez indica que se presume que hubo [un] acuerdo y[,] por ello[,] ninguna de las partes acudió al tribunal."

6. "Además, su representado envió una carta al licenciado Hernández explicando por qué no podía

asumir el costo del 50% de esa universidad y[,] desde que el joven comenzó a estudiar, como había custodia compartida, asumió el 100% de todos los gastos de colegio, matr[í]cula, gastos extracurriculares[,] $100 semanales y así se comportaron durante cinco años y la madre nunca envió recibo al padre."

En la vista[,] el tribunal indica lo siguiente referente al acuerdo:

1. "[L]as partes acordaron que la pensión alimentaria no será revisada [por] los próximos cinco años, a partir de que el honorable tribunal acoja, el 30 de noviembre, *[sic]* salvo cualquier cambio en cuanto, a la determinación de custodia, es decir[,] puede venir al tribunal si cambia la custodia o en caso de que los gastos de la universidad seleccionada por el joven resulten en un gasto mayor, y no haya acuerdo." ["]Señala que la premisa es gasto mayor de universidad y que no logren un acuerdo." (Énfasis omitido).

Examinadas las posturas de las partes, el 31 de octubre de 2024, notificada el 7 de noviembre del mismo año, el Tribunal de Primera Instancia emitió la *Resolución* que nos ocupa, mediante la cual declaró No Ha Lugar la *Moción en Solicitud de Orden de Reembolso por Incumplimiento con Resolución por Estipulación* promovida por Moreno Campa.[14] El foro primario indicó que en el presente caso las partes tenían distintas interpretaciones de lo que habían acordado en las estipulaciones sobre pensión alimentaria, específicamente lo relacionado a los gastos universitarios de C.D.M. Resolvió que, al revisar el texto de la transacción, la mensualidad escolar hacía referencia a la escuela St. Mary's donde los menores asistían en ese momento. Determinó que en ninguna parte de las estipulaciones se mencionó los eventuales gastos universitarios de C.D.M. como parte de la "mensualidad escolar". No obstante, señaló que en el subinciso c del inciso C de las estipulaciones en cuestión hay un acuerdo de que "[...] la pensión alimentaria no será revisada en los próximos cinco (5) años, [...] salvo cualquier cambio en cuanto

---

[14] Apéndice del recurso, págs. 58-69.

a la determinación de custodia o en caso de que los gastos de la [u]niversidad seleccionada por el menor C.D.M. resulte un gasto mayor y no haya acuerdo". (Énfasis omitido). En ese sentido, indicó que las partes solo acudirían al tribunal en caso de que no hubiera un acuerdo sobre los gastos universitarios de C.D.M. Coligió que, considerando los actos de las partes posteriores a las estipulaciones, existía un acuerdo conforme al que las partes se comportaron durante cinco (5) años, razón por la cual en ese término no habían acudido al tribunal. Concluyó que el acuerdo al que llegaron las partes con relación a los gastos de la universidad de C.D.M., no constituía una enmienda extrajudicial de la estipulación sobre alimentos del 2016, toda vez que la misma transacción contemplaba que las partes podían llegar a un acuerdo.

En desacuerdo, el 22 de noviembre de 2024, Moreno Campa presentó una *Moción en Solicitud de Reconsideración*,[15] a la cual Dalmau Santana se opuso.[16] Atendida la solicitud, el 26 de diciembre de 2024, notificada el 2 de enero de 2025, el foro *a quo* emitió una *Orden* mediante la cual declaró No Ha Lugar la reconsideración.[17]

Inconforme, el 3 de febrero de 2025, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

> Erró el TPI al emitir Resolución sobre un asunto de estricto derecho, presumiendo hechos no entrados en evidencia.
>
> Erró el TPI al emitir, en contra de la política pública vinculante, Resolución que retroactivamente dejó al entonces menor de edad desprovisto de alimentos, existiendo orden para ello.
>
> Erró el TPI al atender *Reconsideración* luego de emitir orden de traslado por falta de competencia.

---

[15] Apéndice del recurso, págs. 73-83.
[16] Íd., págs. 90-93.
[17] Íd., pág. 97.

La parte recurrida compareció mediante *Alegato en Oposici[ó]n a Certiorari* el 4 de marzo del año corriente.

Con el beneficio de la comparecencia de las partes, procedemos a resolver

**II**

**A**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios

evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

Sabido es que la obligación de los padres y madres de alimentar a sus hijos e hijas menores de edad es parte al derecho a la vida consagrado en la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo I. Por tal razón, los casos de alimentos de menores están revestidos del más alto interés público, siendo el interés principal el bienestar de estos. *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 927 (2017); *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016). Esta obligación emana de la relación

filial y se origina desde el momento en que la paternidad o maternidad queda legalmente establecida. *Íd.*; *Fonseca Zayas v. Rodríguez Meléndez,* 180 DPR 623, 632-633 (2011). Conforme a lo anterior, la Asamblea Legislativa ha legislado para procurar que los padres, madres o personas legalmente responsables contribuyan a la manutención y bienestar de sus hijos, hijas o dependientes. Ello, mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación, así como la distribución de las pensiones alimentarias. *Rodríguez Rivera v. De León Otaño,* 191 DPR 700, 712 (2014); 8 LPRA sec. 502. A tales fines, la Exposición de Motivos de la *Ley Orgánica de la Administración para el Sustento de Menores,* Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 *et seq.* (Ley de ASUME), promueve como política pública del Estado Libre Asociado de Puerto Rico que, los padres, madres o personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos e hijas.

Con el propósito de lograr que dicha política se cumpla, se ha legislado con el fin de crear procedimientos justos, rápidos y económicos que garanticen el pago de las pensiones alimenticias a ese sector. Para lograr su encomienda, el Artículo 12 de la Ley de ASUME, 8 LPRA sec. 511, provee el mecanismo para acudir al tribunal mediante un procedimiento judicial expedito. Una vez presentada la petición de alimentos, dicho articulado estatuye que la secretaria del tribunal procederá de inmediato a señalar la vista ante el examinador de pensiones. 8 LPRA sec. 514.

Ahora bien, las pensiones alimentarias pueden ser objeto de estipulaciones acordadas en un pleito de divorcio. *Magee v. Alberro,* 126 DPR 228 (1990). Al abordar este tipo de estipulación, debemos tener presente que las mismas son una vertiente de los contratos de transacción. De ordinario, el análisis a llevarse a cabo debe

circunscribirse a la idea de que el mecanismo de estipulación constituye una declaración de voluntad y esta debe interpretarse de la manera más ceñida a lo acordado. Sin embargo, estas no deben estar sujetas al automatismo y absolutismo de la no modificación. *Valencia, Ex Parte,* 116 DPR 909 (1986). Debido a ello, se ha reconocido jurisprudencialmente que para que proceda un cambio en la pensión estipulada, la parte peticionaria debe probar que las circunstancias al momento de efectuarse la estipulación han cambiado de forma sustancial. *Íd.* Para ello, el tribunal debe estar en posición de analizar las circunstancias en las que se originó el acuerdo transaccional con el fin de observar si, en efecto, hubo un cambio sustancial. La manera más eficiente para ello es sujetar las estipulaciones a una condición suspensiva. Las estipulaciones deben estar condicionadas a un salario base o a las circunstancias que se preponderaron al momento de llegar al acuerdo. A falta de ello, no hay base comparativa para probar el cambio sustancial.

Por otro lado, precisa destacar que, fijada la pensión alimentaria, siempre estará sujeta a revisión y puede modificarse ante un cambio sustancial en las circunstancias personales del alimentante o del alimentista. Así, pues, salvo circunstancias extraordinarias, tal revisión podrá darse en un plazo de tres (3) años, desde la última fijación. Art. 19(c) de la Ley de ASUME, 8 LPRA sec. 518(c); *Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998).

Con relación a la legitimación para reclamar judicialmente pensiones alimentarias, nuestro Tribunal Supremo ha resuelto que mientras los hijos y las hijas sean menores de edad, y no hayan sido emancipados o emancipadas, es la persona progenitora que tenga la patria potestad quien está llamada a reclamar el pago de pensiones a nombre de los hijos y las hijas, siempre y cuando no estén prescritas. *Ríos Rosario v. Vidal Ramos,* 134 DPR 3, 8 (1993). Lo anterior se debe a que es el padre o la madre quien tiene respecto

de sus hijos e hijas no emancipadas el deber de representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho; y la acción para solicitar el pago de pensiones alimentarias es una de esas acciones. *Íd.* No obstante, una vez termina la patria potestad por cualquiera de las causas contempladas en la ley, esta facultad cesa y el alimentista queda legitimado para reclamar judicialmente la pensión. *Íd.*

Nuestro Alto Foro ha señalado que el hecho de que los hijos y las hijas puedan comparecer a solicitar alimentos, aun luego de alcanzar la mayoridad, obedece a que la obligación de alimentarlos no cesa automáticamente porque estos hayan cumplido veintiún (21) años. *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 573 (2012); *Toro Sotomayor v. Colón Cruz,* 176 DPR 528 (2009); *Key Nieves v. Oyola Nieves,* 116 DPR 261, 266 (1985). En otras palabras, la emancipación por mayoría de edad no apareja *ipso facto* la pérdida del derecho a reclamar alimentos de los progenitores, pues siempre subsistirá la obligación que emana del Artículo 658 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7541, que atiende las necesidades alimentarias de parientes. *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 573. De manera que, una vez establecida una pensión alimentaria, ni la emancipación, ni la mayoría de edad de los hijos y las hijas relevan al progenitor de su obligación de alimentarles si aquellos o aquellas lo necesitaren. *Sosa Rodríguez v. Rivas Sariego,* 105 DPR 518, 523 (1976).

En *Argüello v. Argüello,* 155 DPR 62, 71 (2001), se había manifestado que el deber del alimentante de proveer los medios necesarios para la educación de un hijo o una hija no termina, sin más, porque el hijo o la hija hubiese alcanzado la mayoría de edad. Específicamente, en los casos en que el menor ha comenzado los estudios universitarios durante su minoridad, nuestra última

instancia judicial había establecido que, bajo circunstancias normales:

> ... al menos en cuanto a los estudios de bachillerato ... cuando un hijo "se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad". *Íd.,* citando a *Key Nieves v. Oyola Nieves,* supra, pág. 266.

En ese sentido, con la aprobación del Código Civil de Puerto Rico de 2020 fueron incorporados varios artículos, que resultan de suma importancia para el estado de derecho actual, respecto a la dilucidación de pensiones alimentarias en casos donde el alimentista adviene a la mayoridad mientras aun cursa estudios. Así, el Artículo 99 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5593, dispone que:

> La mayoría de edad no extingue inmediatamente las obligaciones de subsistencia ni las atenciones de previsión de los progenitores o de otros obligados a prestarlas en favor de quien adviene a la mayoridad:
>
> (a) Si la ley dispone expresamente su extensión;
> (b) si el beneficiado está sujeto a la patria potestad prorrogada de sus progenitores; o
> (c) si el beneficiado no tiene recursos ni medios propios para su manutención, mientras subsisten las circunstancias por las que es acreedor de ellas.
>
> Las atenciones de previsión incluyen, sin limitarlas a, los seguros de salud, de vida y de incapacidad, los planes de estudio y las garantías prestadas sobre obligaciones que subsisten luego de advenir el beneficiado a la mayoridad.
>
> La persona que alegue la extinción de las obligaciones de subsistencia o las atenciones de previsión sobre quien adviene a la mayoridad, debe probarla.

En ese sentido, el Artículo 655 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7533, dispone lo siguiente:

> Si el alimentista alcanza la mayoridad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares de cada caso.

El tribunal, en atención a las habilidades personales, el potencial de desarrollo y el aprovechamiento académico del alimentista, puede establecer la cuantía, el modo y el plazo de la obligación.

Por otra parte, para modificar la cuantía de las obligaciones por concepto de alimentos, el Artículo 671 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7567, establece que:

La cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyan las necesidades del alimentista y los recursos del obligado.

Cuando el alimentista es menor de edad o es un ascendiente de edad avanzada, la cuantía se modifica únicamente cuando median cambios sustanciales que alteran significativamente las necesidades del alimentista y los recursos del alimentante.

La modificación periódica de las pensiones de los menores de edad y de los ascendientes de edad muy avanzada se rige por la legislación especial complementaria.

Es norma establecida que la cuantía de los alimentos debidos al mayor de edad debe ser proporcional a los recursos del alimentante y a las necesidades del alimentista. Art. 665 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7561.[18] Del mismo modo, cuando la obligación alimentaria recae sobre dos o más personas, el pago se reparte entre ellas en cantidad proporcional a sus respectivos caudales. Art. 663 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7546.[19]

---

[18] En específico, el Artículo 665 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7561, dispone que:

La cuantía de los alimentos debidos al mayor de edad debe ser proporcional a los recursos del alimentante y a las necesidades del alimentista.

Al estimar los recursos de uno y de otro se toma en cuenta el patrimonio acumulado, el potencial de generar ingresos, los beneficios directos e indirectos que recibe de terceras personas, el perfil de sus gastos que no son indispensables y su estilo de vida.

[19] Por su parte, el Artículo 663 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7546, establece que:

Si la obligación alimentaria recae sobre dos o más personas, el pago se reparte entre ellas en cantidad proporcional a sus respectivos caudales. En caso de necesidad urgente o ante circunstancias especiales, el tribunal puede obligar a uno solo de ellos a que preste provisionalmente los alimentos y este tiene derecho, a su vez, a reclamar oportunamente de los demás obligados la parte que a ellos corresponda.

En lo referente a la fecha de efectividad de las reducciones de la cuantía de la obligación del pago de alimentos, el Artículo 672 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7568, dispone que:

> El alimentante no puede reducir la cuantía de la obligación sin la autorización judicial.
>
> Sometida la solicitud de reducción y probados sus fundamentos, el tribunal dictará su resolución, desde cuya fecha será efectiva.

Relacionado a ello, el Tribunal Supremo de Puerto Rico ha expresado que:

> [A]unque los alimentos se deben desde que se solicitan, como regla general, la fecha de efectividad de una rebaja en la pensión alimentaria deberá ser la del día en que se emite el dictamen que la autoriza. Sin embargo, hay situaciones en la que el foro de instancia retiene facultad para disponer distinto sobre la retroactividad de los decretos judiciales de reducción de pensiones alimentarias. Tales situaciones se refieren a casos extraordinarios de enfermedad, hospitalización, inconsciencia y, en general, cualquier evento constitutivo de fuerza mayor o de caso fortuito. Para tal eventualidad hay soluciones más prácticas, tales como congelar temporeramente la vigencia de la pensión total o parcial durante el per[i]odo de tiempo de que se trate. *Vázquez v. López*, 160 DPR 714, 728 (2003). Véase, además, *Valencia, Ex Parte*, supra, pág. 914; *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550 (2012).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

### III

La parte peticionaria plantea en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al emitir una resolución sobre un asunto de estricto derecho, presumiendo hechos no entrados en evidencia. Como segundo señalamiento de error, sostiene que el foro primario erró al emitir una determinación, en contra de la política pública vinculante, que retroactivamente dejó al entonces menor de edad C.D.M. desprovisto de alimentos, existiendo orden para ello. En su tercer y último error señalado, alega que el foro *a quo* incidió al atender una solicitud de

reconsideración luego de emitir una orden de traslado por falta de competencia. Por estar relacionados entre sí, discutiremos los errores en conjunto.

Según esbozamos, si la obligación alimentaria recae sobre dos o más personas, el pago se reparte entre ellas en cantidad proporcional a sus respectivos caudales. Ahora bien, las pensiones alimentarias pueden ser objeto de estipulaciones acordadas. En ese sentido, para que proceda un cambio en la pensión estipulada, la parte peticionaria debe probar que las circunstancias al momento de efectuarse la estipulación han cambiado de forma sustancial. La cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyan las necesidades del alimentista y los recursos de la persona obligada. Sin embargo, acogidas las estipulaciones por el tribunal, el alimentante no puede reducir la cuantía de la obligación sin la autorización judicial. Por lo tanto, la fecha de efectividad de una rebaja en la pensión alimentaria deberá ser la del día en que se emite el dictamen que la autoriza.

Por otro lado, reseñamos que quien está llamada a reclamar el pago de pensiones de los menores de edad es la persona progenitora que tenga la patria potestad. No obstante, una vez termina la patria potestad por cualquiera de las causas contempladas en la ley, esta facultad cesa y el alimentista queda legitimado para reclamar judicialmente la pensión. Recordemos que el hecho de que los hijos y las hijas puedan comparecer a solicitar alimentos, aun luego de alcanzar la mayoridad, obedece a que la obligación de alimentarlos no cesa automáticamente porque estos hayan cumplido veintiún (21) años. Es decir, la emancipación por mayoría de edad no apareja *ipso facto* la pérdida del derecho a reclamar alimentos de los progenitores, pues siempre subsistirá la obligación que emana de nuestro ordenamiento jurídico actual. De manera que, una vez establecida una pensión alimentaria, ni la

emancipación, ni la mayoría de edad de los hijos y las hijas relevan al progenitor de su obligación de alimentarles si aquellos o aquellas lo necesitaren.

En el caso de autos, las partes estipularon la pensión alimentaria de sus dos hijos mientras estos eran menores de edad. Entre las estipulaciones, las partes acordaron que los gastos escolares de ambos menores serían cubiertos por ambos progenitores en partes iguales (50%). De igual forma, las partes estipularon que:

> **[L]a pensión alimentaria no será revisada en los próximos cinco (5) años, a partir de que este Honorable Tribunal acoja la presente [e]stipulación, salvo cualquier cambio en cuanto a la determinación de custodia o en caso de que los gastos de la [u]niversidad seleccionada por el menor C.D.M. resulte en un gasto mayor y no haya acuerdo**. En ese caso, cualquiera de las partes podrá acudir al [t]ribunal, aunque no hayan transcurrido los cinco (5) años, pero solo a esos fines. (Énfasis nuestro).

De lo anterior surge claramente que las partes acordaron que se dividirían los gastos escolares de los menores en partes iguales. Asimismo, no cabe duda de que las partes estipularon que acudirían al tribunal si los gastos de la universidad seleccionada por su hijo C.D.M. resultara en un gasto mayor y las partes no llegaran a un acuerdo. A su vez, nuestro ordenamiento jurídico es claro en que ambos progenitores tienen la misma responsabilidad de proveer los medios necesarios para la educación de su hijo, incluyendo la universitaria. Surge del expediente ante nos que el recurrido admitió que no estuvo de acuerdo con la selección de universidad de C.D.M. y así se lo comunicó a la peticionaria por escrito. Sin embargo, no se desprende de autos que el recurrido solicitara un remedio formal a esos efectos por la vía judicial. Lo que surge del expediente es que el recurrido, *motu proprio*, dejó de aportar su parte de la pensión alimentaria de C.D.M., bajo el fundamento de que los gastos

universitarios de dicho menor excedían su caudal, mientras que la peticionaria tenía el capital para sufragar el cien por ciento (100%) de los mencionados gastos. Sin embargo, dichas circunstancias económicas del recurrido no fueron presentadas ni probadas ante un foro judicial mediante la solicitud de una modificación de la pensión alimentaria estipulada.

Ante la falta de autorización judicial, los acuerdos llegados en el 2016 por las partes y acogidos por el tribunal seguían vigentes al momento de la peticionaria solicitar el reembolso que dio génesis a la controversia ante nos. Por tanto, ante el escenario anterior en donde la propia parte recurrida reconoció su incumplimiento con el pago de la pensión alimentaria de C.D.M., procedía considerar en los méritos la petición de reembolso promovida por la peticionaria con la celebración de una vista evidenciaria donde esta acreditara los gastos incurridos por los cuales solicitó la referida acción.

Ahora bien, lo anterior procede únicamente en cuanto a los gastos universitarios sufragados por la peticionaria mientras C.D.M. era menor edad. Una vez C.D.M. advino a la mayoría de edad, este es quien ostenta la legitimación activa para solicitar los alimentos correspondientes.

En vista de lo anterior, concluimos que el Tribunal de Primera Instancia incidió en su proceder, por lo que se hace necesaria nuestra intervención en esta etapa de los procedimientos, pues la disposición de la determinación recurrida, además de tratarse sobre un asunto de relaciones de familia, es contraria a derecho y, el no intervenir, podría resultar en un fracaso irremediable de la justicia. Por consiguiente, y al amparo de lo dispuesto en nuestro ordenamiento jurídico, procede la expedición del auto de *certiorari* y la revocación de la *Resolución* recurrida.

## IV

Por los fundamentos que anteceden, expedimos el recurso de *certiorari* solicitado y revocamos el dictamen recurrido. Devolvemos el caso al foro primario para la celebración de una vista evidenciaria conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Ortiz Flores disiente mediante voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-ESPECIAL

| MARYANGELY E. MORENO CAMPA RICARDO DALMAU SANTANA  PETICIONARIOS    EXPARTE | KLCE202500104 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina  Civil Núm.: F DI2015-0746  Sobre: Divorcio Consentimiento mutuo |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Mateu Meléndez[1]

**VOTO DISIDENTE DE LA JUEZA ORTIZ FLORES**

En San Juan, Puerto Rico, a 16 de junio de 2025.

Disiento de la determinación tomada por la mayoría del Panel que expide el auto de *certiorari* y revoca la *Resolución* emitida el 31 octubre de 2024 y notificada el 7 de noviembre siguiente, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI); en el referido dictamen, el TPI declaró No Ha Lugar una solicitud de reembolso promovida por la señora Maryangely E. Moreno Campa (Sra. Moreno Campa; peticionaria).

Luego de analizar el recurso de *Certiorari* presentado por la Sra. Moreno Campa y los documentos incluidos en el apéndice, el *Alegato en Oposición a Certiorari* presentado por el señor Ricardo Dalmau Santana (Sr. Dalmau Santana; recurrido), y conforme a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, y la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, es mi opinión que debemos denegar la expedición del recurso de *certiorari*.

---

[1] Mediante la Orden Administrativa OATA2025-011 se designó a la Hon. Ana M. Mateu Meléndez en sustitución de la Hon. Lersy Boria Vizcarrondo por inhibición.

Con el beneficio de la comparecencia de las partes, procedo a esbozar los hechos pertinentes y a discutir el derecho aplicable, a los fines de exponer los fundamentos que sostienen mi opinión de no intervenir en esta etapa de los procedimientos.

## I. RELACIÓN DE HECHOS Y SEÑALAMIENTOS DE ERRORES

El 14 de junio de 2013, el señor Ricardo Dalmau Santana (Sr. Dalmau Santana; recurrido) y la Sra. Moreno Campa fueron divorciados bajo la causal de consentimiento mutuo mediante Sentencia.[2] Las partes realizaron acuerdos que fueron recogidos en Estipulaciones, las cuales fueron presentadas y avaladas por el tribunal.[3] Por motivo de un retraso en pago de pensión de parte del Sr. Dalmau Santana, las partes llegaron a unos nuevos acuerdos y los presentaron al tribunal mediante escrito intitulado *Estipulación sobre Alimentos y Desacato*.[4] Esta segunda estipulación fue acogida por el TPI el 22 de noviembre de 2016.[5]

Bajo los nuevos acuerdos, las partes esencialmente pactaron que estas responderían por partes iguales en cuanto a los gastos de las mensualidades y materiales escolares de los dos menores de edad que tienen en común. No obstante, en vista de que uno de los menores ingresaría próximamente a la universidad, constataron lo siguiente:

> Las partes han acordado que la pensión alimentaria no será revisada en los próximos cinco (5) años, a partir de que este Honorable Tribunal acoja la presente Estipulación, salvo cualquier cambio en cuanto a la determinación de custodia o en caso de que los gastos de la Universidad seleccionada por el menor C.D.M. resulte en un gasto mayor y no haya acuerdo. En ese caso, cualquiera de las partes podrá acudir al Tribunal aunque no hayan transcurrido los cinco (5) años, pero solo a esos fines.[6]

---

[2] Apéndice del recurso, pág. 7.
[3] Apéndice del recurso, págs. 1-6.
[4] Apéndice del recurso, págs. 8-18.
[5] Apéndice del recurso, pág. 20.
[6] Apéndice del recurso, pág. 15.

Así las cosas, el menor C.D.M. decidió estudiar en la Universidad de Tampa, en la cual había sido aceptado, y en el transcurso de sus estudios alcanzó la mayoría de edad. Al cabo de unos años, el 25 de abril de 2024 la peticionaria presentó ante el TPI una *Moción en Solicitud de Orden de Reembolso por Incumplimiento con Resolución por Estipulación* donde esencialmente alegó que el recurrente no cumplió con su deber de pagar la mitad de los gastos de los estudios universitarios del menor y la Sra. Moreno Campa se vio en la obligación de asumir la totalidad de los gastos. Por tal motivo, reclamó un reembolso por la cantidad de $101,236.96. Dicha cantidad representa el 50% de los gastos acumulados, que alegó ascendieron a un total de $202,473.92.[7]

En respuesta a la solicitud, el Sr. Dalmau Santana presentó su oposición y la Sra. Moreno Campa una réplica. El TPI entonces señaló vista y esta fue celebrada el 5 de septiembre de 2024. Ambas partes comparecieron con sus respectivas representaciones legales y tuvieron la oportunidad de expresarse. El TPI entonces emitió *Resolución* el 31 de octubre de 2024 y allí determinó lo siguiente:

> El señor Ricardo Dalmau Santana afirma que existía un acuerdo, conforme al cual las partes se han comportado durante cinco años. Que el padre expresó que no estaba de acuerdo con que Caleb estudiara fuera de Puerto Rico. Afirma que la señora Maryangely Moreno Campa indicó que asumiría el 100% de los gastos de los estudios universitarios de Caleb en Estados Unidos. Que desde ese momento, el padre comenzó a asumir el 100% de los gastos de su otro hijo Noah Sebastián Dalmau Moreno. Alega que en la Estipulación señala que las partes solo acudirían al Tribunal en caso de que no hubiera un acuerdo sobre los gastos universitarios de Caleb. Que ninguna de las partes acudió al tribunal durante los pasados cinco años, ya que había entre ellos el acuerdo antes descrito. Por tanto, solicita que se declare No Ha Lugar la petición de reembolso radicada.
>
> Como podemos ver, en el presente caso las partes tienen distintas interpretaciones de lo que acordaron en la ESTIPULACIÓN SOBRE ALIMENTOS Y DESACATO, referente a los gastos universitarios de su hijo Caleb.

---

[7] Apéndice del recurso, págs. 23-26.

Al revisar el texto de la transacción, en el Inciso B, indica claramente que la mensualidad escolar a la que se hace referencia, es a la "Mensualidad Escolar de St. Mary's School de los menores". También queda claro que el 50% de la cantidad total de los gastos, que incluyen la mensualidad escolar de St. Mary's School, estudios supervisados, cafetería escolar, y plan médico de ambos menores [asciende] a $754.08.

[...]

Como podemos ver las partes acordaron que la pensión alimentaria no sería revisada por los próximos cinco años, contados a partir del 30 de noviembre de 2016, fecha en que el Tribunal dictó la RESOLUCIÓN acogiendo lo estipulado por las partes. Solo se dispuso dos excepciones al acuerdo de no revisar la pensión alimentaria por cinco años: 1) si ocurría cualquier cambio en cuanto a la determinación de custodia, o 2) en caso de que los gastos de la Universidad seleccionada por el menor C.D.M. resulte en un gasto mayor no haya acuerdo. En caso de ocurrir alguna de estas dos circunstancias, cualquiera de las partes podía acudir al Tribunal, pero solo a esos fines. En particular, en cuanto a los gastos universitarios, tenía que resultar en un gasto mayor, y además no haber podido llegar las partes a un acuerdo sobre dicho gasto mayor.

**La estipulación señala que las partes solo acudirían al Tribunal en caso de que no hubiera un acuerdo sobre los gastos universitarios de Caleb. Sin embargo, en el presente caso, considerando principalmente los actos de los contratantes posteriores al contrato, podemos ver que existía un acuerdo, conforme al cual las partes se comportaron durante cinco años. Que ninguna de las partes acudió al tribunal durante los pasados cinco años, ya que había entre ellos el acuerdo antes descrito. Este acuerdo al que llegaron las partes con relación a los gastos de la universidad de Caleb, no [constituye] una enmienda extrajudicial de ESTIPULACIÓN SOBRE ALIMENTOS Y DESACATO, porque la misma transacción contempla que las partes podían llegara a un acuerdo.**

Por los fundamentos antes expresados, declaramos No Ha Lugar la MOCIÓN EN SOLICITUD DE ORDEN DE REEMBOLSO POR INCUMPLIMIENTO CON RESOLUCIÓN POR ESTIPULACIÓN presentada por la señora Maryangely Moreno Campa, y se deniega la petición de reembolso. Se ordena la continuación de los procedimientos en el presente caso.[8] (Énfasis nuestro.)

La peticionaria presentó una *Moción en Solicitud de Reconsideración*, la cual fue declarada No Ha Lugar.[9] Como

---

[8] Apéndice del recurso, págs. 67-69.
[9] Apéndice del recurso, pág. 97.

resultado de ello, acudió mediante auto de *certiorari* ante este tribunal intermedio y puntualizó los siguientes señalamientos de error:

A. Primer Señalamiento de Error:
Erró el TPI al emitir Resolución sobre un asunto de estricto derecho, presumiendo hechos no entrados en evidencia.

B. Segundo Señalamiento de Error:
Erró el TPI al emitir, en contra de la política pública vinculante, Resolución que retroactivamente dejó al entonces menor de edad desprovisto de alimentos, existiendo orden para ello.

C. Tercer Señalamiento de Error:
Erró el TPI al atender *Reconsideración* luego de emitir orden de traslado por falta de competencia.

El recurrido compareció oportunamente mediante su *Alegato en Oposición a Certiorari*, quedando así debidamente perfeccionado el recurso.

## II. DERECHO APLICABLE

El auto de *certiorari* es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior". *Rivera et al. v. Arcos Dorados*, 212 DPR 194, 207 (2023), que cita a *IG Builders v. BBVAPR*, 185 DPR 307, 337-338 (2012). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *IG Builders v. BBVAPR, supra*. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (Regla 52.1). Particularmente, en cuanto al *certiorari* para revisar dictámenes interlocutorios del foro primario, en su parte pertinente, la Regla 52.1 dispone lo siguiente:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la

denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. **Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.** [...] (Énfasis nuestro.) 32 LPRA Ap. V, R. 52.1.

Así pues, a este foro intermedio le corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari*. Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que auscultar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de alguno de los asuntos establecidos en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué materias, solamente, se podrá expedir el auto de *certiorari*. En aquellos casos en los que el asunto no esté comprendido dentro de la norma, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente. Superada esta etapa, analizamos si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. Como se sabe, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

A su vez, los foros apelativos "no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, perjuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), que cita a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Asimismo, con relación a determinaciones interlocutorias discrecionales procesales, no debemos sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, "salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción". *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 664 (2000). Finalmente, es norma reiterada que al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. A su vez, los foros apelativos no debemos intervenir con las decisiones de los tribunales de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial". *Lluch v. España Service Sta., supra*, pág. 745.

**III**

**CONCLUSIONES DE DERECHO**

La Regla 52.1 de Procedimiento Civil, *supra,* nos faculta la revisión de resoluciones dictadas por el TPI, a manera de excepción, si estas versan sobre asuntos de casos de relaciones de familia. Sin embargo, es preciso recalcar que nuestra discreción no se ejerce en el vacío. Por su parte, la Regla 40 de Procedimiento Civil, *supra,* establece los criterios para nosotros determinar si debemos ejercer nuestra facultad discrecional para expedir un auto de *certiorari.* Cónsono con lo anterior, no encuentro que el tribunal primario haya incurrido en un abuso de discreción o que haya actuado bajo prejuicio o parcialidad que acarree un fracaso de la justicia. Tampoco se demostró que el foro recurrido se haya equivocado en la interpretación o aplicación de una norma procesal ni que intervenir en esta etapa evitaría un perjuicio sustancial contra los peticionarios, razón por la cual soy del criterio que se debe denegar la expedición del *certiorari.*

**IV**

Por lo antes expuesto, mi opinión es que se debe denegar la expedición del auto de *certiorari,* por lo que disiento del dictamen de la mayoría de nuestro panel.

LAURA IVETTE ORTIZ FLORES
Juez de Apelaciones